**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | |
|---|---|
| ICASHE, INC.,<br>a Delaware corporation,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>APPLE INC.,<br>a California corporation.<br><br>　　　　　　Defendant. | Civil Action No. 7:26-cv-00187<br><br><br>**JURY TRIAL DEMANDED** |

## <u>COMPLAINT FOR PATENT INFRINGEMENT</u>

Plaintiff iCashe, Inc. ("Plaintiff" or "iCashe"), by its attorneys, hereby alleges patent infringement against Defendant Apple Inc. ("Defendant" or "Apple"), as follows:

### INTRODUCTION

1.　　This is an action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.* iCashe alleges that Apple has infringed and/or continues to infringe, directly and/or indirectly, five iCashe patents: U.S. Patent Nos. 9,122,965 ("'965 patent"), 9,483,722 ("'722 patent"), 11,694,053 ("'053 patent"), 8,403,219 ("'219 patent"), and 11,270,174 ("'174 patent") (collectively, the "iCashe Patents"), copies of which are attached hereto as Exhibits 1-5, respectively.

2.　　The iCashe Patents cover foundational technologies for contactless mobile payments, including: (1) the use of inventive performance-enhancement circuitry for active load modulation and/or signal amplification in near-field communications (NFC); and/or (2) the use of inventive circuitry to generate time-varying magnetic fields (TVMF) for NFC. The claimed

inventions enable Defendant to offer superior mobile and wearable devices with NFC- and/or TVMF-based payment functionality, *e.g.*, Apple Pay, allowing users of such Apple mobile and wearable devices to more easily, reliably, and efficiently complete payment transactions at point-of-sale payment terminals.

3.      Defendant has infringed and/or continues to infringe the iCashe Patents, directly and indirectly, by: (1) making, using, testing, selling, offering for sale, and/or importing into the United States, mobile devices and wearable devices that include infringing NFC and/or TVMF functionality; (2) practicing the claimed methods of the iCashe Patents in the United States by making, testing, and/or using Apple mobile devices and wearable devices that include the claimed NFC and/or TVMF functionality; and (3) at least from the date of filing of this Complaint, inducing third parties to use, sell, offer for sale, and/or import into the United States, Apple mobile devices and wearable devices that include infringing NFC and/or TVMF functionality, with knowledge of the iCashe Patents and of the third parties' direct infringement resulting therefrom.

4.      iCashe seeks damages, including past damages, and other relief for Apple's infringement of the iCashe Patents.

**THE PARTIES**

5.      Plaintiff iCashe, Inc. is a corporation organized and existing under the laws of the State of Delaware, with offices at 5331 S. Macadam Ave., #251, Portland, Oregon 97239.

6.      Defendant Apple is a corporation organized and existing under the laws of the State of California, with corporate offices in the Western District of Texas at 6900 W Palmer Ln., Austin, Texas 78729. On information and belief, Apple may be served through its registered agent, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

7.      Defendant maintains retail store locations in this District whereby it offers and sells

2

Apple mobile devices and wearable devices that include infringing NFC and/or TVMF functionality, including for example: 3121 Palm Way, Austin Texas 78758; 2901 S. Capital of Texas Hwy, Austin, Texas 78746; 15900 La Cantera Parkway, San Antonio, Texas 78256; 7400 San Pedro Avenue, San Antiono, Texas 78216; and 8401 Gateway Boulevard West, El Paso, Texas 79925.

8.      Additionally, Defendant has authorized sellers and sales representatives that offer and sell infringing products throughout the State of Texas, including in this District and to consumers throughout this District, such as: Best Buy, 4970 W Highway 290, Austin, Texas 78735; AT&T Store, 2400 N Mesa St., Ste. E, El Paso, Texas 79902; Verizon Store, 255 E Basse Rd., Ste. 1530, San Antonio, Texas 78209; and Amazon.com.

## JURISDICTION AND VENUE

9.      This is an action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 101 *et seq.*

10.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11.      This Court has specific and personal jurisdiction over Defendant consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long-Arm Statute. Tex. Civ. Prac. & Rem. Code § 17.042. On information and belief, Defendant has sufficient minimum contacts with the forum because Defendant transacts substantial business in the State of Texas and in this District. On information and belief, Defendant has more than 6,000 employees at its Austin, Texas facility, working in areas such as engineering, research and development, marketing, sales, and customer support for wireless devices. Further, Defendant has, directly or through subsidiaries or intermediaries, committed and continues to commit acts of

patent infringement in the State of Texas and in this District as alleged in this Complaint, as alleged more particularly below.

12. Venue is proper in this District pursuant to 28 U.S.C. §§ 1400(b) and 1391(b) and (c) because Defendant is subject to personal jurisdiction in this District and has committed acts of patent infringement in this District. Defendant has a regular and established place of business and employees in this District. Defendant makes, uses, sells, and/or offers to sell infringing products within this District, regularly does and solicits business in this District, and has the requisite minimum contacts with the District such that this venue is a fair and reasonable one. Further, Defendant has admitted or not contested proper venue in this District in other patent infringement actions.

## FACTUAL BACKGROUND

### I.   Plaintiff iCashe and the Inventors

13. The iCashe Patents relate to, among other things, circuits and systems that enable high-performance communications between mobile devices and point-of-sale payment terminals and facilitate mobile contactless payments (also commonly called "tap to" functionality), among other contactless applications.

14. The patented inventions resulted from years of investment in research and development by iCashe, its predecessor Tyfone, Inc. ("Tyfone"), and the founders of those companies, including inventor Dr. Siva Narendra.

15. Dr. Narendra co-founded Tyfone in 2004 to create a secure payment platform using mobile phones. Dr. Narendra envisioned a future in which consumers would use their phones for payments instead of cash, checks, or credit cards, for both convenience and improved security. Tyfone invested in research and development to create hardware for mobile phones to

4

communicate effectively and securely with point-of-sale (POS) payment terminals.

16.    Tyfone's innovations in mobile contactless payment hardware and systems have resulted in over 40 patents covering these technologies. Tyfone has assigned certain of those patents to iCashe, which has the responsibility to protect and license those patents as well as carry on the mobile wallet business that originated with Tyfone.

## II.    The iCashe Patents

17.    Plaintiff iCashe solely owns the iCashe Patents, including the exclusive rights to bring suit with respect to any past, present, and future infringement thereof.

18.    The '965 patent, entitled "13.56 MHz Enhancement Circuit for Smartcard Controller," was duly and legally issued on September 1, 2015, from a patent application filed October 17, 2014, with Siva G. Narendra, Saurav Chakraborty, and Prabhakar Tadepalli as the named inventors. The '965 patent claims priority to U.S. Patent Application No. 12/188,346, filed on August 8, 2008, now U.S. Patent No. 7,961,101.

19.    The '722 patent, entitled "Amplifier and Transmission Solution for 13.56MHz Radio Coupled to Smartcard Controller," was duly and legally issued on November 1, 2016, from a patent application filed October 17, 2014, with Siva G. Narendra, Saurav Chakraborty, and Prabhakar Tadepalli as the named inventors. The '722 patent claims priority to U.S. Patent Application No. 12/188,346, filed on August 8, 2008, now U.S. Patent No. 7,961,101.

20.    The '053 patent, entitled "Method and Apparatus for Transmitting Data via NFC for Mobile Applications Including Mobile Payments and Ticketing," was duly and legally issued on July 4, 2023, from a patent application filed February 18, 2021, with Siva G. Narendra, Saurav Chakraborty, and Prabhakar Tadepalli as the named inventors. The '053 patent claims priority to U.S. Patent Application No. 12/188,346, filed on August 8, 2008, now U.S. Patent No. 7,961,101.

21. The '219 patent, entitled "Apparatus with Smartcard Circuitry Powered By a Mobile Device," was duly and legally issued on March 26, 2013, from a patent application filed October 12, 2012, with Siva G. Narendra, Thomas N. Spitzer, and Prabhakar Tadepalli as the named inventors. The '219 patent claims priority to U.S. Patent Application No. 11/063,291, filed on February 22, 2005, now U.S. Patent No. 7,581,678.

22. The '174 patent, entitled "Mobile Phone with Magnetic Card Emulation," was duly and legally issued on March 8, 2022, from a patent application filed September 15, 2020, with Siva G. Narendra, Thomas N. Spitzer, and Prabhakar Tadepalli as the named inventors. The '174 patent claims priority to U.S. Patent Application No. 11/063,291, filed on February 22, 2005, now U.S. Patent No. 7,581,678.

23. Each of the iCashe Patents is valid and enforceable.

24. Defendant is not authorized to practice the iCashe Patents.

25. The inventions recited in the iCashe Patents enable Defendant to offer, among other things, superior mobile and wearable devices with NFC- and/or TVMF-based "tap to" functionality.

**III.   Apple**

26. Apple is a global leader in the mobile device and wearable device market, which includes smartphones, tablets, and smartwatches. On information and belief, Apple designs, manufactures, uses, offers for sale, sells, and/or imports into the United States—including into the Western District of Texas—billions of dollars of mobile devices and wearable devices every year.

27. Apple had global revenues of approximately $307 billion across all product categories in 2025, a significant portion of which is attributable to mobile devices.

IV.    **Apple's Direct Infringement and the Accused Instrumentalities**

28.    Defendant has directly infringed, and/or continues to infringe, pursuant to 35 U.S.C. § 271(a), one or more claims of each of the iCashe Patents (as further specified below as to each of the iCashe Patents, in Counts I-V) by: (1) making, using, testing, offering to sell, selling within the United States, and/or importing into the United States, Apple mobile devices and/or wearable devices that include NFC- and/or TVMF-based payment functionality, including but not limited to Apple Pay functionality; and (2) practicing the claimed methods of the iCashe Patents in the United States by using and/or testing Apple mobile devices and/or wearable devices that include the claimed NFC- and/or TVMF-based payment functionality, including but not limited to Apple Pay functionality. The products that iCashe accuses of infringing the iCashe Patents are collectively referred to herein as the "Accused Instrumentalities."

29.    The Accused Instrumentalities include devices that incorporate the claimed inventions, including infringing implementations of NFC- and/or TVMF-based payment functionality, including but not limited to Apple Pay functionality. The Accused Instrumentalities include but are not limited to:

- Apple smartphones and tablets (collectively, "Accused Mobile Devices"), including but not limited to iPhone, iPhone Pro, iPhone Pro Max, iPhone SE, iPhone Mini, iPhone Plus, and iPhone Air smartphones and iPad, iPad Pro, iPad Air, and iPad Mini tablets, including the exemplary Apple iPhone 14 Pro Max smartphone;

- Apple smartwatches and wearable devices ("Accused Wearables"), including but not limited to Apple Watch, Apple Watch Ultra, and Apple Watch SE smartwatches; and

7

- Any additional Apple devices that incorporate the NFC- and/or TVMF-based payment functionality, including but not limited to Apple Pay functionality, described herein.

30. The Accused Instrumentalities include products made, used, tested, offered for sale, sold within the United States, and/or imported into the United States within the last six years before the filing date of this Complaint. The Accused Instrumentalities also include products used to perform the claimed methods of the iCashe Patents within the last six years before the filing date of this Complaint.

31. The claims of the iCashe Patents relate generally to, *inter alia*, contactless mobile payments and the use of (1) inventive performance-enhancement circuitry for active load modulation and/or signal amplification in near-field communications (NFC); and/or (2) inventive circuitry to generate time-varying magnetic fields (TVMF) for NFC. *See, e.g.*, '965 at 19:11-20:40; '722 at 19:40-20:52; '053 at 20:10-21:32; '219 at 16:16-18:6; '174 at 17:9-18:51. The inventions of the iCashe Patents enable Defendant to offer superior mobile and wearable devices with NFC- and/or TVMF-based payment functionality, allowing users of such Apple mobile and wearable devices to more easily, reliably, and efficiently complete payment transactions at a variety of point-of-sale payment terminals and at greater distances and angles than would be possible without the iCashe inventions.

32. The presence of NFC- and/or TVMF-based payment functionality in the Accused Instrumentalities is established with respect to the exemplary Apple iPhone 14 Pro Max in the charts submitted herewith as Exhibits 6-10. On information and belief, all Accused Instrumentalities operate in substantially the same way as the exemplary Apple iPhone 14 Pro Max smartphone with respect to the functionality described below and in Exhibits 6-10.

8

33. Defendant had actual knowledge of, or was willfully blind to, the '219 patent and the '174 patent prior to the filing of this lawsuit. Defendant has had actual knowledge of Dr. Narendra, iCashe's predecessor, Tyfone, and the patented innovations in mobile contactless payment hardware and systems, developed by Tyfone and now owned by iCashe, since at least 2011. In approximately June 2011, Tyfone representatives discussed Tyfone's technology with Defendant and disclosed to Defendant that Tyfone owned patents and pending patent applications related to its technology. In materials shared with Defendant, Tyfone representatives identified patent numbers, including U.S. Patent No. 7,581,678 and 7,828,214, which are each related to—and share a disclosure with—the '219 patent and the '174 patent. At a minimum, Defendant willfully blinded itself to the '219 patents and the '174 patent in view of the communications and information exchanged between the parties.

34. Defendant had actual knowledge of, or was willfully blind to, the '965 patent, the '722 patent, and the '053 patent prior to the filing of this lawsuit. Patents held by Tyfone or iCashe have been cited during the prosecution of Defendant's patents. For example, during the prosecution of U.S. Patent Application No. 14/287,151, which issued as Patent No. 10,019,699, the patent examiner cited U.S. Publication No. 2011/0171996, which is related to—and shares a disclosure with—the '965 patent, the '722 patent, and the '053 patent.

## V. Apple's Indirect Infringement

35. From at least the date of this Complaint, Defendant indirectly infringes the iCashe Patents by inducing infringement by others, such as importers, resellers, customers, and end users under 35 U.S.C. § 271(b) in this District and elsewhere in the United States and the State of Texas.

36. Specifically, Defendant induces others' direct infringement of the iCashe Patents by selling Accused Instrumentalities to third-party customers, such as retailers, who then directly

infringe by using, offering to sell, selling within the United States, and/or importing into the United States those Accused Instrumentalities, which infringe the iCashe Patents.

37.    On information and belief, Defendant actively promotes the NFC- and/or TVMF-based payment functionality of the Accused Instrumentalities for the U.S. market. For example, on information and belief, for every one of the Accused Instrumentalities sold in the United States, Defendant pursues and obtains approval from U.S. and state regulatory agencies, such as the United States Federal Communications Commission, to allow sales of such Accused Instrumentalities in the United States.

38.    Defendant knows that its customers will sell infringing Accused Instrumentalities in the United States or cause Accused Instrumentalities to be sold in the United States—or has deliberately avoided learning of the infringing circumstances so as to be willfully blind to the infringement that was induced—and Defendant specifically intends their customers to purchase those Accused Instrumentalities from Defendant and sell the Accused Instrumentalities in the United States or cause Accused Instrumentalities to be sold in the United States. Defendant's direct and indirect purchasers directly infringe the iCashe Patents by importing such Accused Instrumentalities into the United States, selling such Accused Instrumentalities in the United States, and using such Accused Instrumentalities in the United States.

39.    Defendant further induces others' direct infringement of the iCashe Patents by providing instruction and direction to end users, such as consumers, about how to use the Accused Instrumentalities such that those end users use the Accused Instrumentalities and directly infringe the iCashe Patents. Defendant has knowledge that end users will use Accused Instrumentalities in the manner directed by Defendant and specifically intends that end users will perform such uses in the United States. In some instances, such infringing uses occur upon operation of the Accused

Instrumentalities in their normal, intended manner without any specific action of the end user other than turning on the product. That is, Defendant has configured the Accused Instrumentalities in such a way as to induce infringement by end users upon any use of those Accused Instrumentalities. In other instances, such infringing uses occur upon normal operation of, *e.g.*, the Apple Pay functionality of the Accused Instrumentalities.

40.    Defendant has induced others' direct infringement despite actual notice that the Accused Instrumentalities infringe the iCashe Patents, as set forth herein. Defendant therefore has caused its purchasers and end users to directly infringe the iCashe Patents with knowledge of the iCashe Patents and specific intent that the purchasers and end users will directly infringe, or have deliberately avoided learning of the infringing circumstances so as to be willfully blind to the infringement that was induced.

41.    Defendant derives significant revenue by selling products, including the Accused Instrumentalities, to third parties who directly infringe one or more claims of the iCashe Patents.

42.    Defendant had actual knowledge of, or was willfully blind to, the '219 patent and the '174 patent prior to the filing of this lawsuit. Defendant has had actual knowledge of Dr. Narendra, iCashe's predecessor, Tyfone, and the patented innovations in mobile contactless payment hardware and systems, developed by Tyfone and now owned by iCashe, since at least 2011. In approximately June 2011, Tyfone representatives discussed Tyfone's technology with Defendant and disclosed to Defendant that Tyfone owned patents and pending patent applications related to its technology. In materials shared with Defendant, Tyfone representatives identified patent numbers, including U.S. Patent No. 7,581,678 and 7,828,214, which are each related to—and share a disclosure with—the '219 patent and the '174 patent. At a minimum, Defendant willfully blinded itself to the '219 patents and the '174 patent in

11

view of the communications and information exchanged between the parties.

43.    Defendant had actual knowledge of, or was willfully blind to, the '965 patent, the '722 patent, and the '053 patent prior to the filing of this lawsuit. Patents held by Tyfone or iCashe have been cited during the prosecution of Defendant's patents. For example, during the prosecution of U.S. Patent Application No. 14/287,151, which issued as Patent No. 10,019,699, the patent examiner cited U.S. Publication No. 2011/0171996, which is related to—and shares a disclosure with—the '965 patent, the '722 patent, and the '053 patent.

44.    The above-described acts of indirect infringement committed by Defendant Apple have caused injury and damage to Plaintiff iCashe, and will cause additional severe and irreparable injury and damages in the future.

### COUNT I: INFRINGEMENT OF U.S. PATENT NO. 9,122,965

45.    The allegations set forth in paragraphs 1 through 44 of this Complaint are incorporated by reference as though fully set forth herein.

46.    Pursuant to 35 U.S.C. § 282, the '965 patent is presumed valid.

47.    Defendant has directly infringed and continues to infringe one or more claims of the '965 patent in violation of 35 U.S.C. § 271. The infringing products are the Accused Instrumentalities.

48.    The Apple iPhone 14 Pro Max provides a representative example of Defendant's infringement of the '965 patent. The Accused Instrumentalities directly infringe at least claim 7 of the '965 patent at least in the manner described with respect to the exemplary Apple iPhone 14 Pro Max smartphone in Exhibit 6, submitted herewith. Plaintiff's allegations of infringement are not limited to claim 7, and additional infringed claims will be identified and disclosed through discovery and infringement contentions.

49.     The descriptions and infringement theories set forth in Exhibit 6 are preliminary and based on publicly available information. iCashe expects to further develop infringement evidence after obtaining discovery from Defendant in the course of this case.

50.     On information and belief, the other Accused Instrumentalities are in relevant part substantially similar to the exemplary Apple iPhone 14 Pro Max smartphone, in particular with regard to the manner in which the Accused Instrumentalities include and utilize NFC- and/or TVMF-based payment functionality, including but not limited to Apple Pay functionality. Exhibit 6 is thus illustrative of the manner in which each of the Accused Instrumentalities infringes.

51.     Defendant has actual notice pursuant to 35 U.S.C. § 287(a) of the '965 patent and the infringement alleged herein at least upon the filing of this Complaint. iCashe has complied with the notice requirement of 35 U.S.C. § 287. Neither iCashe nor any authorized licensee made, offered for sale, or sold within the United States any article embodying the '965 patent claims following issuance of the '965 patent.

52.     Defendant indirectly infringes the '965 patent by actively inducing the direct infringement of others of the '965 patent, in the United States, the State of Texas, and the Western District of Texas.

53.     Defendant induces, through affirmative acts, its customers and other third parties, such as retailers and end users, to directly infringe the '965 patent by using, offering to sell, selling within the United States, and/or importing into the United States those Accused Instrumentalities, which infringe the '965 patent.

54.     On information and belief, Defendant actively promotes the Accused Instrumentalities for the U.S. market. For example, on information and belief, for every one of Defendant's Accused Instrumentalities sold in the United States, Defendant pursues and obtains

13

approval from U.S. and state regulatory agencies, such as the United States Federal Communications Commission, to allow sales of such Accused Instrumentalities in the United States.

55.    Defendant knows that its customers will sell infringing Accused Instrumentalities in the United States or cause Accused Instrumentalities to be sold in the United States, and Defendant specifically intends its customers to purchase those Accused Instrumentalities from Defendant and sell the Accused Instrumentalities in the United States or cause Accused Instrumentalities to be sold in the United States. Defendant's direct and indirect purchasers directly infringe the '965 patent by importing such Accused Instrumentalities into the United States, selling such Accused Instrumentalities in the United States, and using such Accused Instrumentalities in the United States.

56.    Defendant further induces others' direct infringement of the '965 patent by providing instruction and direction to end users, such as consumers, about how to use the Accused Instrumentalities such that those end users use the Accused Instrumentalities and directly infringe the '965 patent. Defendant has knowledge that end users will use Accused Instrumentalities in the manner directed by Defendant and specifically intends that end users will perform such uses in the United States. Such infringing uses occur upon operation of the Accused Instrumentalities in their normal, intended manner without any specific action of the end user other than turning on the product. That is, Defendant has configured the Accused Instrumentalities in such a way as to induce infringement by end users upon any use of those Accused Instrumentalities.

57.    Defendant induces others' direct infringement despite actual notice that the Accused Instrumentalities infringe the '965 patent. At least as of the date of filing of this Complaint, Defendant knows that the induced conduct would constitute infringement—and

14

intends that infringement at the time of committing the aforementioned affirmative acts, such that the acts and conduct have been and continue to be committed with the specific intent to induce infringement—or deliberately avoided learning of the infringing circumstances at the time of committing these acts so as to be willfully blind to the infringement that was induced.

58.   The above-described acts of infringement committed by Defendant have caused injury and damage to iCashe, and will cause additional severe and irreparable injury and damages in the future.

59.   Defendant's acts of infringement as described above are willful, at least as of the date of filing of this Complaint.

60.   iCashe is entitled to recover damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial, but in no event less than a reasonable royalty.

### COUNT II: INFRINGEMENT OF U.S. PATENT NO. 9,483,722

61.   The allegations set forth in paragraphs 1 through 44 of this Complaint are incorporated by reference as though fully set forth herein.

62.   Pursuant to 35 U.S.C. § 282, the '722 patent is presumed valid.

63.   Defendant has directly infringed and continues to infringe one or more claims of the '722 patent in violation of 35 U.S.C. § 271. The infringing products are the Accused Instrumentalities.

64.   The Apple iPhone 14 Pro Max provides a representative example of Defendant's infringement of the '722 patent. The Accused Instrumentalities directly infringe at least claim 11 of the '722 patent at least in the manner described with respect to the exemplary Apple iPhone 14 Pro Max smartphone in Exhibit 7, submitted herewith. Plaintiff's allegations of infringement are not limited to claim 11, and additional infringed claims will be identified and disclosed through

discovery and infringement contentions.

65.    The descriptions and infringement theories set forth in Exhibit 7 are preliminary and based on publicly available information. iCashe expects to further develop infringement evidence after obtaining discovery from Defendant in the course of this case.

66.    On information and belief, the other Accused Instrumentalities are in relevant part substantially similar to the exemplary Apple iPhone 14 Pro Max smartphone, in particular with regard to the manner in which the Accused Instrumentalities include and utilize NFC- and/or TVMF-based payment functionality, including but not limited to Apple Pay functionality. Exhibit 7 is thus illustrative of the manner in which each of the Accused Instrumentalities infringes.

67.    Defendant has actual notice pursuant to 35 U.S.C. § 287(a) of the '722 patent and the infringement alleged herein at least upon the filing of this Complaint. iCashe has complied with the notice requirement of 35 U.S.C. § 287. Neither iCashe nor any authorized licensee made, offered for sale, or sold within the United States any article embodying the '722 patent claims following issuance of the '722 patent.

68.    Defendant indirectly infringes the '722 patent by actively inducing the direct infringement of others of the '722 patent, in the United States, the State of Texas, and the Western District of Texas.

69.    Defendant induces, through affirmative acts, its customers and other third parties, such as retailers and end users, to directly infringe the '722 patent by using, offering to sell, selling within the United States, and/or importing into the United States those Accused Instrumentalities, which infringe the '722 patent.

70.    On information and belief, Defendant actively promotes the Accused Instrumentalities for the U.S. market. For example, on information and belief, for every one of

16

Defendant's Accused Instrumentalities sold in the United States, Defendant pursues and obtains approval from U.S. and state regulatory agencies, such as the United States Federal Communications Commission, to allow sales of such Accused Instrumentalities in the United States.

71.    Defendant knows that its customers will sell infringing Accused Instrumentalities in the United States or cause Accused Instrumentalities to be sold in the United States, and Defendant specifically intends its customers to purchase those Accused Instrumentalities from Defendant and sell the Accused Instrumentalities in the United States or cause Accused Instrumentalities to be sold in the United States. Defendant's direct and indirect purchasers directly infringe the '722 patent by importing such Accused Instrumentalities into the United States, selling such Accused Instrumentalities in the United States, and using such Accused Instrumentalities in the United States.

72.    Defendant further induces others' direct infringement of the '722 patent by providing instruction and direction to end users, such as consumers, about how to use the Accused Instrumentalities such that those end users use the Accused Instrumentalities and directly infringe the '722 patent. Defendant has knowledge that end users will use Accused Instrumentalities in the manner directed by Defendant and specifically intends that end users will perform such uses in the United States. Such infringing uses occur upon operation of the Accused Instrumentalities in their normal, intended manner without any specific action of the end user other than turning on the product. That is, Defendant has configured the Accused Instrumentalities in such a way as to induce infringement by end users upon any use of those Accused Instrumentalities.

73.    Defendant induces others' direct infringement despite actual notice that the Accused Instrumentalities infringe the '722 patent. At least as of the date of filing of this

Complaint, Defendant knows that the induced conduct would constitute infringement—and intends that infringement at the time of committing the aforementioned affirmative acts, such that the acts and conduct have been and continue to be committed with the specific intent to induce infringement—or deliberately avoided learning of the infringing circumstances at the time of committing these acts so as to be willfully blind to the infringement that was induced.

74. The above-described acts of infringement committed by Defendant have caused injury and damage to iCashe, and will cause additional severe and irreparable injury and damages in the future.

75. Defendant's acts of infringement as described above are willful, at least as of the date of filing of this Complaint.

76. iCashe is entitled to recover damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial, but in no event less than a reasonable royalty.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 11,694,053

77. The allegations set forth in paragraphs 1 through 44 of this Complaint are incorporated by reference as though fully set forth herein.

78. Pursuant to 35 U.S.C. § 282, the '053 patent is presumed valid.

79. Defendant has directly infringed and continues to infringe one or more claims of the '053 patent in violation of 35 U.S.C. § 271. The infringing products are the Accused Instrumentalities.

80. The Apple iPhone 14 Pro Max provides a representative example of Defendant's infringement of the '053 patent. The Accused Instrumentalities directly infringe at least claim 1 of the '053 patent at least in the manner described with respect to the exemplary Apple iPhone 14 Pro Max smartphone in Exhibit 8, submitted herewith. Plaintiff's allegations of infringement are

not limited to claim 1, and additional infringed claims will be identified and disclosed through discovery and infringement contentions.

81.     The descriptions and infringement theories set forth in Exhibit 8 are preliminary and based on publicly available information. iCashe expects to further develop infringement evidence after obtaining discovery from Defendant in the course of this case.

82.     On information and belief, the other Accused Instrumentalities are in relevant part substantially similar to the exemplary Apple iPhone 14 Pro Max smartphone, in particular with regard to the manner in which the Accused Instrumentalities include and utilize NFC- and/or TVMF-based payment functionality, including but not limited to Apple Pay functionality. Exhibit 8 is thus illustrative of the manner in which each of the Accused Instrumentalities infringes.

83.     Defendant has actual notice pursuant to 35 U.S.C. § 287(a) of the '053 patent and the infringement alleged herein at least upon the filing of this Complaint. iCashe has complied with the notice requirement of 35 U.S.C. § 287. Neither iCashe nor any authorized licensee made, offered for sale, or sold within the United States any article embodying the '053 patent claims following issuance of the '053 patent.

84.     Defendant indirectly infringes the '053 patent by actively inducing the direct infringement of others of the '053 patent, in the United States, the State of Texas, and the Western District of Texas.

85.     Defendant induces, through affirmative acts, its customers and other third parties, such as retailers and end users, to directly infringe the '053 patent by using, offering to sell, selling within the United States, and/or importing into the United States those Accused Instrumentalities, which infringe the '053 patent.

86.     On   information   and   belief,   Defendant   actively   promotes   the   Accused

19

Instrumentalities for the U.S. market. For example, on information and belief, for every one of Defendant's Accused Instrumentalities sold in the United States, Defendant pursues and obtains approval from U.S. and state regulatory agencies, such as the United States Federal Communications Commission, to allow sales of such Accused Instrumentalities in the United States.

87.    Defendant knows that its customers will sell infringing Accused Instrumentalities in the United States or cause Accused Instrumentalities to be sold in the United States, and Defendant specifically intends its customers to purchase those Accused Instrumentalities from Defendant and sell the Accused Instrumentalities in the United States or cause Accused Instrumentalities to be sold in the United States. Defendant's direct and indirect purchasers directly infringe the '053 patent by importing such Accused Instrumentalities into the United States, selling such Accused Instrumentalities in the United States, and using such Accused Instrumentalities in the United States.

88.    Defendant further induces others' direct infringement of the '053 patent by providing instruction and direction to end users, such as consumers, about how to use the Accused Instrumentalities such that those end users use the Accused Instrumentalities and directly infringe the '053 patent. Defendant has knowledge that end users will use Accused Instrumentalities in the manner directed by Defendant and specifically intends that end users will perform such uses in the United States. Such infringing uses occur upon operation of the Accused Instrumentalities in their normal, intended manner without any specific action of the end user other than turning on the product. That is, Defendant has configured the Accused Instrumentalities in such a way as to induce infringement by end users upon any use of those Accused Instrumentalities.

89.    Defendant induces others' direct infringement despite actual notice that the

20

Accused Instrumentalities infringe the '053 patent. At least as of the date of filing of this Complaint, Defendant knows that the induced conduct would constitute infringement—and intends that infringement at the time of committing the aforementioned affirmative acts, such that the acts and conduct have been and continue to be committed with the specific intent to induce infringement—or deliberately avoided learning of the infringing circumstances at the time of committing these acts so as to be willfully blind to the infringement that was induced.

90.   The above-described acts of infringement committed by Defendant have caused injury and damage to iCashe, and will cause additional severe and irreparable injury and damages in the future.

91.   Defendant's acts of infringement as described above are willful, at least as of the date of filing of this Complaint.

92.   iCashe is entitled to recover damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial, but in no event less than a reasonable royalty.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 8,403,219

93.   The allegations set forth in paragraphs 1 through 44 of this Complaint are incorporated by reference as though fully set forth herein.

94.   Pursuant to 35 U.S.C. § 282, the '219 patent is presumed valid.

95.   Defendant has directly infringed and continues to infringe one or more claims of the '219 patent in violation of 35 U.S.C. § 271. The infringing products are the Accused Instrumentalities.

96.   The Apple iPhone 14 Pro Max provides a representative example of Defendant's infringement of the '219 patent. The Accused Instrumentalities directly infringe at least claim 1 of the '219 patent at least in the manner described with respect to the exemplary Apple iPhone 14

Pro Max smartphone in Exhibit 9, submitted herewith. Plaintiff's allegations of infringement are not limited to claim 1, and additional infringed claims will be identified and disclosed through discovery and infringement contentions.

97.    The descriptions and infringement theories set forth in Exhibit 9 are preliminary and based on publicly available information. iCashe expects to further develop infringement evidence after obtaining discovery from Defendant in the course of this case.

98.    On information and belief, the other Accused Instrumentalities are in relevant part substantially similar to the exemplary Apple iPhone 14 Pro Max smartphone, in particular with regard to the manner in which the Accused Instrumentalities include and utilize NFC- and/or TVMF-based payment functionality, including but not limited to Apple Pay functionality. Exhibit 9 is thus illustrative of the manner in which each of the Accused Instrumentalities infringes.

99.    Defendant has actual notice pursuant to 35 U.S.C. § 287(a) of the '219 patent and the infringement alleged herein at least upon the filing of this Complaint. iCashe has complied with the notice requirement of 35 U.S.C. § 287. Neither iCashe nor any authorized licensee made, offered for sale, or sold within the United States any article embodying the '219 patent claims following issuance of the '219 patent.

100.    Defendant indirectly infringes the '219 patent by actively inducing the direct infringement of others of the '219 patent, in the United States, the State of Texas, and the Western District of Texas.

101.    Defendant induces, through affirmative acts, its customers and other third parties, such as retailers and end users, to directly infringe the '219 patent by using, offering to sell, selling within the United States, and/or importing into the United States those Accused Instrumentalities, which infringe the '219 patent.

102. On information and belief, Defendant actively promotes the Accused Instrumentalities for the U.S. market. For example, on information and belief, for every one of Defendant's Accused Instrumentalities sold in the United States, Defendant pursues and obtains approval from U.S. and state regulatory agencies, such as the United States Federal Communications Commission, to allow sales of such Accused Instrumentalities in the United States.

103. Defendant knows that its customers will sell infringing Accused Instrumentalities in the United States or cause Accused Instrumentalities to be sold in the United States, and Defendant specifically intends its customers to purchase those Accused Instrumentalities from Defendant and sell the Accused Instrumentalities in the United States or cause Accused Instrumentalities to be sold in the United States. Defendant's direct and indirect purchasers directly infringe the '219 patent by importing such Accused Instrumentalities into the United States, selling such Accused Instrumentalities in the United States, and using such Accused Instrumentalities in the United States.

104. Defendant further induces others' direct infringement of the '219 patent by providing instruction and direction to end users, such as consumers, about how to use the Accused Instrumentalities such that those end users use the Accused Instrumentalities and directly infringe the '219 patent. Defendant has knowledge that end users will use Accused Instrumentalities in the manner directed by Defendant and specifically intends that end users will perform such uses in the United States. Such infringing uses occur upon operation of the Accused Instrumentalities in their normal, intended manner without any specific action of the end user other than turning on the product. That is, Defendant has configured the Accused Instrumentalities in such a way as to induce infringement by end users upon any use of those Accused Instrumentalities.

105.    Defendant induces others' direct infringement despite actual notice that the Accused Instrumentalities infringe the '219 patent. At least as of the date of filing of this Complaint, Defendant knows that the induced conduct would constitute infringement—and intends that infringement at the time of committing the aforementioned affirmative acts, such that the acts and conduct have been and continue to be committed with the specific intent to induce infringement—or deliberately avoided learning of the infringing circumstances at the time of committing these acts so as to be willfully blind to the infringement that was induced.

106.    The above-described acts of infringement committed by Defendant have caused injury and damage to iCashe, and will cause additional severe and irreparable injury and damages in the future.

107.    Defendant's acts of infringement as described above are willful, at least as of the date of filing of this Complaint.

108.    iCashe is entitled to recover damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial, but in no event less than a reasonable royalty.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 11,270,174

109.    The allegations set forth in paragraphs 1 through 44 of this Complaint are incorporated by reference as though fully set forth herein.

110.    Pursuant to 35 U.S.C. § 282, the '174 patent is presumed valid.

111.    Defendant has directly infringed and continues to infringe one or more claims of the '174 patent in violation of 35 U.S.C. § 271. The infringing products are the Accused Instrumentalities.

112.    The Apple iPhone 14 Pro Max provides a representative example of Defendant's infringement of the '174 patent. The Accused Instrumentalities directly infringe at least claim 1 of

24

the '174 patent at least in the manner described with respect to the exemplary Apple iPhone 14 Pro Max smartphone in Exhibit 10, submitted herewith. Plaintiff's allegations of infringement are not limited to claim 1, and additional infringed claims will be identified and disclosed through discovery and infringement contentions.

113.   The descriptions and infringement theories set forth in Exhibit 10 are preliminary and based on publicly available information. iCashe expects to further develop infringement evidence after obtaining discovery from Defendant in the course of this case.

114.   On information and belief, the other Accused Instrumentalities are in relevant part substantially similar to the exemplary Apple iPhone 14 Pro Max smartphone, in particular with regard to the manner in which the Accused Instrumentalities include and utilize NFC- and/or TVMF-based payment functionality, including but not limited to Apple Pay functionality. Exhibit 10 is thus illustrative of the manner in which each of the Accused Instrumentalities infringes.

115.   Defendant has actual notice pursuant to 35 U.S.C. § 287(a) of the '174 patent and the infringement alleged herein at least upon the filing of this Complaint. iCashe has complied with the notice requirement of 35 U.S.C. § 287. Neither iCashe nor any authorized licensee made, offered for sale, or sold within the United States any article embodying the '174 patent claims following issuance of the '174 patent.

116.   Defendant indirectly infringes the '174 patent by actively inducing the direct infringement of others of the '174 patent, in the United States, the State of Texas, and the Western District of Texas.

117.   Defendant induces, through affirmative acts, its customers and other third parties, such as retailers and end users, to directly infringe the '174 patent by using, offering to sell, selling within the United States, and/or importing into the United States those Accused Instrumentalities,

25

which infringe the '174 patent.

118. On information and belief, Defendant actively promotes the Accused Instrumentalities for the U.S. market. For example, on information and belief, for every one of Defendant's Accused Instrumentalities sold in the United States, Defendant pursues and obtains approval from U.S. and state regulatory agencies, such as the United States Federal Communications Commission, to allow sales of such Accused Instrumentalities in the United States.

119. Defendant knows that its customers will sell infringing Accused Instrumentalities in the United States or cause Accused Instrumentalities to be sold in the United States, and Defendant specifically intends its customers to purchase those Accused Instrumentalities from Defendant and sell the Accused Instrumentalities in the United States or cause Accused Instrumentalities to be sold in the United States. Defendant's direct and indirect purchasers directly infringe the '174 patent by importing such Accused Instrumentalities into the United States, selling such Accused Instrumentalities in the United States, and using such Accused Instrumentalities in the United States.

120. Defendant further induces others' direct infringement of the '174 patent by providing instruction and direction to end users, such as consumers, about how to use the Accused Instrumentalities such that those end users use the Accused Instrumentalities and directly infringe the '174 patent. Defendant has knowledge that end users will use Accused Instrumentalities in the manner directed by Defendant and specifically intends that end users will perform such uses in the United States. Such infringing uses occur upon operation of the Accused Instrumentalities in their normal, intended manner without any specific action of the end user other than turning on the product. That is, Defendant has configured the Accused Instrumentalities in such a way as to

induce infringement by end users upon any use of those Accused Instrumentalities.

121. Defendant induces others' direct infringement despite actual notice that the Accused Instrumentalities infringe the '174 patent. At least as of the date of filing of this Complaint, Defendant knows that the induced conduct would constitute infringement—and intends that infringement at the time of committing the aforementioned affirmative acts, such that the acts and conduct have been and continue to be committed with the specific intent to induce infringement—or deliberately avoided learning of the infringing circumstances at the time of committing these acts so as to be willfully blind to the infringement that was induced.

122. The above-described acts of infringement committed by Defendant have caused injury and damage to iCashe, and will cause additional severe and irreparable injury and damages in the future.

123. Defendant's acts of infringement as described above are willful, at least as of the date of filing of this Complaint.

124. iCashe is entitled to recover damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial, but in no event less than a reasonable royalty.

**JURY TRIAL DEMANDED**

iCashe, Inc. hereby demands a trial by jury on all claims and issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff iCashe respectfully requests that this Court:

A.       Enter judgment that Defendant Apple has infringed one or more claims of each of the iCashe Patents and continues to infringe those claims, and that such infringement is willful;

B.       Enter an order, pursuant to 35 U.S.C. § 284, awarding to Plaintiff iCashe monetary relief in an amount adequate to compensate for Defendant Apple's infringement of the iCashe

27

Patents, in an amount to be determined at trial, but not less than a reasonable royalty, as well as pre- and post-judgment interest and costs and enhanced damages for Defendant's willful infringement of the iCashe Patents;

C.      Enter an order that Defendant Apple pay to Plaintiff iCashe ongoing royalties in an amount to be determined for any infringement occurring after the date that judgment is entered;

D.      Enter an order, pursuant to 35 U.S.C. § 285, declaring this to be an exceptional case and thereby awarding to Plaintiff iCashe its reasonable attorneys' fees; and

E.      Enter an order awarding to Plaintiff iCashe such other and further relief, whether at law or in equity, that this Court seems just, equitable, and proper.

28

Dated: May 8, 2026                    Respectfully submitted,

                                      By: */s/ Mark D. Siegmund*

                                      Of Counsel:
                                      Andrea L. Fair
                                      Texas State Bar No. 24078488
                                      E-mail: andrea@millerfairhenry.com
                                      **MILLER FAIR HENRY, PLLC**
                                      1507 Bill Owens Parkway
                                      Longview, TX 75604
                                      Telephone: (903) 757-6400
                                      Facsimile: (903) 757-2323

                                      Of Counsel:
                                      Mark D. Siegmund
                                      Texas State Bar No. 24117055
                                      E-mail: msiegmund@cjsjlaw.com
                                      **CHERRY JOHNSON SIEGMUND JAMES PC**
                                      Bridgeview Center
                                      7901 Fish Pond Road, 2nd Floor
                                      Waco, TX 76710
                                      Telephone: (254) 732-2242
                                      Facsimile: (866) 627-3509

                                      Aaron R. Fahrenkrog
                                      MN Bar No. 0386673 (admitted in this District)
                                      Email: afahrenkrog@robinskaplan.com
                                      Logan J. Drew
                                      MN Bar No. 0389449 (admitted in this District)
                                      Email: ldrew@robinskaplan.com
                                      Emily J. Tremblay
                                      MN Bar No. 0395003 (to appear *pro hac vice*)
                                      Email: etremblay@robinskaplan.com
                                      Jessica L. Gutierrez
                                      MN Bar No. 0396359 (to appear *pro hac vice*)
                                      Email: jgutierrez@robinskaplan.com
                                      **ROBINS KAPLAN LLP**
                                      2800 LaSalle Plaza
                                      800 LaSalle Avenue
                                      Minneapolis, MN 55402
                                      Telephone: 612-349-8500
                                      Facsimile: 612-339-4181

                                      *Attorneys for Plaintiff iCashe, Inc.*

29